# IN RE TRUST CREATED BY WILL OF REUBEN WARNER.
## FIRST TRUST COMPANY OF ST. PAUL AND
## ANOTHER v. DAKIN COCHRANE.[1]

December 31, 1953.

No. 36,173.

---

[1]Reported in 61 N. W. (2d) 840.

Robins, Davis & Lyons and Kenneth E. Tilsen, for appellant.
Lightner & Gehan, for respondents.

MATSON, JUSTICE.

Appeal, by a remainderman beneficiary, from an order terminating a trust and providing for the delivery of the trust res to the life beneficiary free and clear of the trust.

We are concerned with this question: Under the testamentary trust instrument herein may a successor trustee exercise the power conferred upon the original trustees to pay and deliver the whole or any part of the trust principal to the life beneficiary in the event of the death of her husband and if they deem it expedient?

Testator died in 1905 leaving a will (dated August 26, 1901) by which he created a trust—with his two sons and his attorney as trustees—in the following language:

"Item 2. I give and bequeath to Reuben Warner, my son, Harry F. Warner, my son, and William H. Lightner, and their successors, the sum of thirty thousand (30,000) dollars, in trust however for the following purposes: To invest and re-invest the same * * * and * * * to collect the income thereof and after payment of necessary expenses to pay the net income thereof quarterly to my daughter Grace Alice, the wife of George Cochran, during her life; and upon the death of my said daughter to pay and deliver said sum or the property in which the same may then be invested, or the remainder thereof, in equal shares to any child or children of my said daughter Grace Alice or to their issue by right of representation who may survive her; * * *. And I further

authorize and empower the said trustee during the life of my said daughter *in case of the death of her said husband and in case they shall judge expedient so to do,* to pay and deliver the whole or any part of the principal * * * to my said daughter to be held and owned by her absolutely." (Italics supplied.)

By Item 11 of the will he devised for the benefit of his wife his homestead in trust to the same trustees by name without making any mention of successor trustees. By Item 13 he made a similar trust bequest of one-eighth of his residuary estate for the benefit of his wife without mentioning successor trustees.

By Item 15 he bequeathed the seven-eighths remainder of his estate outright to his six sons and his daughter Abbie (not to be confused with the daughter mentioned in Item 2) subject, however, to the proviso that, if any of his sons should not be of age 25 when testator died, such minor son's share should, for his benefit, pass to the trustees hereinbefore first mentioned *and their successors.*

Item 19 of the will, after giving "to the trustees hereinbefore named" (without mentioning their successors) full powers of sale and investment, specifically provides:

"* * * Provided, however, that the authority hereby granted to said trustees, *or their successors,* either in this item *or any other provisions of this will* shall only be exercised with the unanimous consent and approval of all three of said trustees or their successors." (Italics supplied.)

The two sons named as trustees died, and in 1934, the sole surviving trustee resigned and was discharged by the court and the First Trust Company of St. Paul was appointed the sole trustee. On November 26, 1952, the husband of the daughter who was beneficiary of the trust died, and the daughter petitioned the court to have the trustee turn over to her the corpus of the trust as was provided in the testator's will; shortly thereafter the trustee joined in the daughter's petition. Dakin Cochrane, the daughter's sole living child, filed an objection to the petition on the ground that the power to turn over the corpus to the life beneficiary was per-

sonal to the original trustees and did not pass to their successor. On June 15, 1953, the court granted the petition to terminate the trust and pay over the corpus to the daughter (the life beneficiary). The objector appeals from the order granting the petition.

■ Under the trust instrument herein does the discretionary power vested in the original trustees to terminate the trust and to pay the corpus to the daughter pass to the successor trustees as an incident of the office of the trustee or was such discretionary power a purely personal one annexed exclusively to the persons of the original trustees? M. S. A. 501.41 provides that, upon the death of the surviving trustee of an express trust, all the powers and duties of the original trustees vest in the district court and are to be exercised by its appointee.[2] It is generally recognized that a statute of this nature is but declaratory of common-law and equity principles and does not obliterate the common-law rule that discretionary powers which are *purely personal* to a designated trustee do not pass to his successor.[3] In accord with this general rule we hold that § 501.41 has no application to the problem herein.

■ Whether, in the absence of an express provision, a discretionary power is attached to the office of trustee so as to pass to a successor trustee or whether such power is so purely personal to the original trustees as not to be exercisable by a successor trustee depends in the last analysis on the intent of the settlor as revealed by the language of the trust instrument in the light of the surrounding circumstances[4] or, as some authorities frankly put it, upon what the settlor would have intended had he given specific thought to the matter.[5] In any event the settlor's intent, when once ascertained, is controlling.

[2] State ex rel. Flodin v. District Court, 222 Minn. 546, 25 N. W. (2d) 692.

[3] Will of Doe, 232 Wis. 34, 285 N. W. 764, 126 A. L. R. 926; 3 Bogert, Trusts and Trustees, § 532; 13 Minn. L. Rev. 164; Annotations, 126 A. L. R. 931, 940, and 2 A. L. R. (2d) 1447.

[4] Watling v. Watling (6 Cir.) 27 F. (2d) 193; In re Estate of Boutwell, 112 Vt. 159, 22 A. (2d) 157; Pippin v. Barker, 233 N. C. 549, 64 S. E. (2d) 830; Restatement, Trusts, § 196; 2 Perry, Trusts and Trustees (7 ed.) § 496; 2 Scott, Trusts, § 196; Annotation, 126 A. L. R. 931.

[5] 2 Scott, Trusts, § 196.

544

In applying these principles to the creation of a trust by will, whether the testator intended a discretionary trust power to be ex officio or to be a purely personal power limited to the original trustees is to be ascertained by construing the language of the will as a whole in the light of all the surrounding circumstances.[6] As an aid to construction we have the well-recognized presumption or inference[7] that:

"If it is not provided by the terms of the trust in specific words that powers conferred upon the trustee may be exercised by successor trustees, such powers can properly be exercised by successor trustees, unless the settlor manifested an intention that they should be exercised only by the trustee originally named." Restatement, Trusts, § 196, *comment a*.

As a further aid Restatement, Trusts, § 196, *comment a*, appropriately states:

"In determining the intention of the settlor whether a power conferred by the terms of the trust should be exercised only by the trustee originally named, the following circumstances *may* be relevant: (1) the nature and extent of the power; (2) the time at which the power may be exercised; (3) the amount of discretion involved in the exercise of the power; (4) the purposes of the trust; (5) whether the original trustee is an individual or a corporation; (6) whether the power is conferred upon the trustee by name; (7) the relationship of the original trustee to the settlor or the beneficiaries; (8) the relationship between settlor and beneficiaries." (Italics supplied.)

■ With these rules of construction in mind we turn to the pertinent trust provisions hereinbefore set forth. It is significant

---

[6]See, In re Trust Under Will of Comstock, 219 Minn. 325, 17 N. W. (2d) 656; In re Trust Created by Watland, 211 Minn. 84, 300 N. W. 195; In re Trusteeship Created Under Will of Ordean, 195 Minn. 120, 261 N. W. 706.

[7]In re City Bank Farmers Trust Co. 64 N. Y. S. (2d) 523, 525; Bray v. Old Nat. Bank, 113 Ind. App. 506, 516, 48 N. E. (2d) 846, 850; Industrial Trust Co. v. Monaghan, 30 Del. Ch. 418, 62 A. (2d) 240; Restatement, Trusts, § 196; 2 Scott, Trusts, § 196; 13 Minn. L. Rev. 164.

that testator in Item 2—involving the creation of the trust herein—used the specific words "and their successors" and that he also used these words in Item 15. Both Items 2 and 15 were for the protection of his children. In Items 11 and 13, wherein he made trust provisions for his wife, he designated only the original trustees and made no mention of *successor trustees*. Where a settlor in creating a trust aptly uses meaningful words in some provisions, especially where such provisions are all related to the *cestuis* of the same general class, and aptly refrains from using such words in other provisions for a *cestui* belonging to another class, the use of such words in one case and not in the other has a significant bearing upon the question of the settlor's intent. It does not follow that in all cases the mere omission or use of the words "and their successors" would be controlling. In the instant case, however, the contrasting use and the failure to use these words is significant, especially in view of the wording in the proviso in Item 19 relating to the unanimous consent of all three trustees or their successors. There would have been no occasion in such provision to speak of the various provisions of the will with regard "to said trustees, or their successors" unless the testator was conscious of an intent that all powers enumerated in Items 2 and 15 were to be exercised by the *successors* as well as the original trustees and that such was not the case as to Items 11 and 13. Where words are appropriately used in one situation and appropriately omitted in another it is ordinarily to be assumed that the testator acted with a purposeful deliberation. See, Snyder v. Safe Deposit & Trust Co. 93 Md. 225, 48 A. 719.

■ Our conclusion that the testator intended the power in question to be exercised by a successor trustee is fortified by certain other factors. First, it is to be noted that the power to terminate the trust and pay the corpus to the daughter was, after the death of her husband, to continue throughout her life. The testator selected trustees who were apparently about the same age as the life beneficiary or older. Undoubtedly he realized the probability that the original trustees might not outlive the daughter—and they did not.

No doubt he also recognized that the occasion for the exercise of the power might arise after they had died. This in itself supplies a basis for an inference that he intended the power should pass to the successor trustee.

"If it is probable that the circumstances calling for the exercise of a power might naturally occur at a time when the trustee originally named would no longer be acting as trustee, the inference is that the settlor intended that successor trustees might exercise the power." Restatement, Trusts, § 196, *comment c.*[8]

Furthermore, the provisions of Item 2 show that the primary purpose for which the testator created the trust was to protect his daughter. This is revealed by his making the principal available to the daughter, after the death of her husband, if the trustees thought it expedient. It is immaterial whether we assume that the testator was thereby seeking to protect her source of income from being destroyed by a spendthrift husband or that he just assumed that after the husband's death she would need additional financial aid. In either event the testator's chief concern was his daughter's welfare. He wanted his daughter, if his trustees thought it expedient, to have the entire trust corpus to the exclusion of her children. It is unlikely that a power so vital to the chief object of his bounty would intentionally be limited to the duration of the lives of the original trustees.

It is also significant that three trustees were originally given the discretionary power. In the case of Matter of Luling, 175 Misc. 915, 919, 26 N. Y. S. (2d) 951, 955, the court said:

"* * * The mere naming by a testator of more than one individual trustee indicates an intention to have the powers granted to the original trustees pass to successor or substituted trustees. If this were not so, an anomalous situation would arise if one or more of the trustees * * * die. The original trustees would have discretionary powers but the substituted trustees would not. The

---

[8]See, 3 Bogert, Trusts and Trustees, § 553; Annotation, 126 A. L. R. 933.

trustees then in charge of the fund would be vested with different powers and would be subject to different liabilities."

We have not overlooked certain other factors which might be construed as a basis for an inference that testator did not intend the power to pass. These factors, however, in the light of the settlor's language and all the surrounding circumstances, are so far overshadowed by indications of a clear intent that the power should pass that no purpose will be served by calling attention to them specifically.

The order of the trial court is affirmed.

Affirmed.